## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

METRO STORAGE LLC,

       Plaintiff,

v.

METRO MINI STORAGE INC.;
METRO MINI STORAGE/CINCO,
LTD.; METRO MINI
STORAGE/COLLEGE STATION,
LTD.; METRO MINI
STORAGE/QUEENSTON, LTD.;
METRO MINI STORAGE/FAIRFIELD,
LTD.; METRO MINI
STORAGE/KINGWOOD, LTD.;
METRO MINI STORAGE NO. 1, LTD.;
METRO MINI STORAGE/FM 1488,
LTD.

       Defendant.

Civil Action File
No.:  17-3096

## <u>COMPLAINT</u>

Plaintiff Metro Storage LLC ("Metro Storage"), by and through its undersigned counsel, hereby asserts its Complaint against Defendants Metro Mini Storage Inc. ("MMS"); Metro Mini Storage/Cinco, Ltd.; Metro Mini Storage/College Station, Ltd.; Metro Mini Storage/Queenston, Ltd.; Metro Mini Storage/Fairfield, Ltd.; Metro Mini Storage/Kingwood, Ltd.; Metro Mini Storage

No. 1, Ltd.; Metro Mini Storage/FM 1488, Ltd. (collectively, "Defendants"), and alleges as follows:

## NATURE OF THIS CASE

1.      Metro Storage is the owner of the federally registered and incontestable trademark METRO SELF STORAGE® for leasing of storage space, and unregistered common law rights in METRO STORAGE and variations of the foregoing. Metro Storage's registration of its METRO SELF STORAGE® mark was issued in 1996, with first use at least as early as 1979.

2.      Metro Storage is the third largest privately-held self storage company in the United States, with 129 locations currently in 14 states, including Texas.

3.      MMS is a Houston-area provider of storage space rental facilities and leasing of storage space. MMS uses the name "Metro Mini Storage" for its business. Upon information and belief, MMS began operating in the Houston area under this name in or about 2002, long after Metro Storage obtained national trademark rights in its METRO SELF STORAGE® mark based on federal trademark registration in 1996.

4.      Metro Mini Storage/Cinco, Ltd.; Metro Mini Storage/College Station, Ltd.; Metro Mini Storage/Queenston, Ltd.; Metro Mini Storage/Fairfield, Ltd.; Metro Mini Storage/Kingwood, Ltd.; Metro Mini Storage No. 1, Ltd.; Metro Mini

Storage/FM 1488, Ltd. (collectively, the "LPs") each own real property on which a Metro Mini Storage facility is located.

5.     Upon information and belief, MMS owns, operates, and/or controls, directly or indirectly, the LPs.

6.     Defendants' use of "Metro Mini Storage" in the Houston area for competing services is confusingly similar to Metro Storage's long prior rights in its METRO SELF STORAGE® and METRO STORAGE marks for leasing of storage space, including Metro Storage's use of these rights in the Houston area.

7.     Metro Storage brings this action for infringement of its trademarks, false designation of origin and false representation, misappropriation and passing off, and unfair competition arising under the Lanham Act, 15 of the United States Code, Sections 1114 and 1125, Texas Bus. & Comm. Code § 17.41, *et seq*., and at common law against Defendants by virtue of Defendants' infringing use of Metro Storage's marks and other intellectual property.

8.     Defendants have willfully and knowingly used and infringed Metro Storage's intellectual property rights in an effort to gain a competitive advantage by causing actual and/or prospective customers of Metro Storage to falsely believe that "Metro Mini Storage" comes from the same source as Metro Storage's services, or that Defendants are authorized to act as Metro Storage representatives,

or are otherwise affiliated with or sponsored or endorsed by Metro Storage. To the extent that local consumers in the Houston area may have first encountered MMS' mark and services, Defendants' infringing use of "Metro Mini Storage" is likely to cause reverse confusion by creating the false impression that Metro Storage's senior mark comes from the same source as Defendants' services. Metro Storage brings this action to preserve its registered mark and intellectual property rights and prevent harm to its current and prospective business relationships through entry of a preliminary and permanent injunction prohibiting Defendants' continuing infringement, and an award of damages, including award of Metro Storage's attorneys' fees. The value of damages relating to Defendants' conduct exceeds $75,000.

## **PARTIES**

9.     Plaintiff Metro Storage LLC is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 13528 Boulton Boulevard, Lake Forest, Illinois 60045.

10.     Defendant Metro Mini Storage Inc., upon information and belief, is a corporation organized and existing under the laws of the State of Texas, with a principal business located at 23250 Westheimer Pkwy, Katy, Texas, 77494.

- 4 -

11.    Upon information and belief, each of the LPs is a limited partnership organized and existing under the laws of the State of Texas, with a principal business located at 3 Greenway Plaza, Suite 2000, Houston, TX  77046.

12.    Upon information and belief, defendant Metro Mini Storage/Cinco, Ltd. owns real property on which a Metro Mini Storage facility is located at Cinco Ranch Katy, 23250 Westheimer Parkway, Katy, TX.

13.    Upon information and belief, defendant Metro Mini Storage/College Station, Ltd. owns real property on which a Metro Mini Storage facility is located at College Station Aggieland, 3101 Texas Ave S., College Station, TX.

14.    Upon information and belief, defendant Metro Mini Storage/Queenston, Ltd. owns real property on which a Metro Mini Storage facility is located at Copperfield Cypress, 8415 Queenston Blvd., Houston, TX.

15.    Upon information and belief, defendant Metro Mini Storage/Fairfield, Ltd. owns real property on which a Metro Mini Storage facility is located at Fairfield Cypress, 27236 U.S. 290, Cypress, TX.

16.    Upon information and belief, defendant Metro Mini Storage/Kingwood, Ltd. owns real property on which a Metro Mini Storage facility is located at Kingwood The Livable Forest, 20535 West Lake Houston Parkway, Houston, TX.

17.     Upon information and belief, defendant Metro Mini Storage No. 1, Ltd. owns real property on which a Metro Mini Storage facility is located at The Woodlands at Gosling Rd., 7474 Gosling Road, The Woodlands, TX.

18.     Upon information and belief, defendant Metro Mini Storage/FM 1488, Ltd. owns real property on which a Metro Mini Storage facility is located at The Woodlands at FM 1488, 3750 FM 1488, The Woodlands, TX.

## JURISDICTION AND VENUE

19.     This Complaint alleges claims under the Lanham Act, making jurisdiction proper in this Court pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. This Complaint alleges claims under §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). The Complaint also alleges state law claims under Texas law that are so related to the federal question claim under the Lanham Act that they form part of the same case and controversy, thereby making the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 appropriate.

20.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is, on information and belief, between citizens of different states.

21.    This Court has personal jurisdiction over MMS in connection with the claims asserted in this Complaint because MMS is located in Katy, Texas, has committed tortious acts within the state and/or committed tortious injury in this state caused by an act or omission outside the state and engaged in other persistent courses of conduct in this state. Among other things, among information and belief, customers of MMS and visitors to MMS' websites live in Texas and are residents of Texas, and MMS has targeted those residents.

22.    This Court has personal jurisdiction over each of the LPs in connection with the claims asserted in this Complaint because each LP is located in Houston, Texas, has committed tortious acts within the state and/or committed tortious injury in this state caused by an act or omission outside the state and engaged in other persistent courses of conduct in this state. Among other things, among information and belief, customers of each LP and visitors to each LP's real property live in Texas and are residents of Texas, and each LP has targeted those residents.

23.    Metro Storage is informed and believes and, based thereon, alleges that venue is proper in this Court under 28 U.S.C. § 1391(a)(2), § 1391(b), and Texas state law, because Defendants have caused tortious injury within the Southern District of Texas, because a substantial part of the infringing acts giving

rise to the claims alleged herein arose, in whole or in part, within this judicial district. Defendants utilize the infringing marks to advertise their goods and services in this judicial district.

## METRO STORAGE'S BUSINESS AND INTELLECTUAL PROPERTY RIGHTS

24.    Metro Storage LLC is the owner of the widely known, registered and incontestable mark METRO SELF STORAGE® and unregistered, common law rights in METRO STORAGE and variations thereof (the "Metro Storage Marks").

25.    Metro Storage owns all right, title, and interest in and to the Metro Storage Marks for storage space rental services and associated moving and storage goods and services, including Metro Storage's incontestable federal trademark Registration No. 1,954,586, issued February 6, 1996, for *leasing of storage space* in International Class 39 (copy of certificate of registration attached hereto as Exhibit A).

26.    Metro Storage has used the Metro Storage Marks anywhere in the United States since at least as early as October 1979, and in commerce since at least as early as April 1990, in connection with storage services, and other moving- and storage-related goods and services.

27.    The Metro Storage Marks have been used in interstate commerce to identify and distinguish Metro Storage's products and services for an extended

- 8 -

period of time and serve as symbols of Metro Storage's quality, reputation, and goodwill. Metro Storage gradually expanded its operations since 1979 and is now the third largest privately-held self storage company in the United States. It currently has 129 locations representing over 8.6 million rentable square feet in 14 states: Alabama, Connecticut, Florida, Georgia, Illinois, Kansas, Louisiana, Minnesota, New Jersey, New York, Pennsylvania, Tennessee, Texas and Wisconsin. Metro Storage consistently advertises its mark in local markets, on the internet at www.metrostorage.com and in social media, and in national storage industry publications.

28.    Metro Storage has, directly and/or through predecessors-in-interest and affiliated companies, offered and sold the aforesaid services under the Metro Storage Marks in interstate commerce since at least as early as April 1990, and such use has not been abandoned and has been valid and continuous to the present day.

29.    In addition to its rights in the Metro Storage Marks, Metro Storage also owns common law trademark rights in its "Metro Storage Keyhole Logo" consisting of the METRO SELF STORAGE® mark and the image of a key inserted into a keyhole forming the "o" of the word "Metro", for storage rental and related services. Metro Storage has used the Metro Storage Keyhole Logo in

commerce since at least as early as April 1990, and such use has not been abandoned and has been valid and continuous to the present day. Examples of the Metro Storage Keyhole Logo as used in commerce are shown below and attached hereto as Exhibit B.



30.     Metro Storage's federal trademark registration entitles it to nationwide ownership and priority of rights since 1996. Metro Storage's website at www.metrostorage.com has been available nationally and to consumers in Texas since in or about 1998. Metro Storage began to operate rental storage facilities in Texas in 2008, with 21 such facilities operating under the METRO SELF STORAGE® mark in Texas by 2011. Two of these locations were in the greater Houston area, namely Kingwood and La Marque. In December 2016, Metro Storage began to operate 4 locations in Houston, in addition to the Kingwood and La Marque locations.  In March 2017, Metro Storage began to operate 10 locations in Amarillo, Lubbock and Plainview, Texas, and now has a total of 29 locations in Texas.

31.     Metro Storage has developed tremendous good will in its distinctive Metro Storage Marks through customer recognition and loyalty to its brand and locations around the country. The Metro Storage Marks and Metro Storage's leasing of storage space and other products and services have acquired renown and a devoted customer base in the states of its operation, including in Texas, and in the storage services field. The trade magazine Mini-Storage Messenger awarded Metro Storage with a Facility of the Year Construction Project Award in 2016. Metro Storage is currently under consideration for a second Facility of the Year Award, in the Conversion category.   This publication is one of two industry magazines circulated monthly to owners/operators in the storage services field.

32.     Through its individual locations, corporate headquarters, and online presence, Metro Storage has sold and continues to sell goods and services, in 14 states of the United States, including in Texas.

33.     Metro Storage uses its Metro Storage Marks in interstate commerce by displaying them on its signage, storage locations, packing supplies and boxes, rental and moving trucks, and other products, and on its website at www.metrostorage.com, social media sites, mailers, flyers, and other promotional materials and advertising media.

- 11 -

34.     Metro Storage has invested millions of dollars developing, advertising and otherwise promoting the Metro Storage Marks in the United States and has succeeded in creating a strong identification between Metro Storage's products and services, and its Metro Storage Marks, resulting in substantial, valuable good will.

35.     The Metro Storage Marks are strong, arbitrary marks that warrant broad protection against use of confusingly similar marks for leasing of storage space or other storage services that are not owned or authorized by Metro Storage.

36.     Since its priority date of October 1979 for the Metro Storage Marks, Metro Storage has manifested the intent to maintain exclusive ownership of the Metro Storage Marks and to continue expanding use of the Metro Storage Marks to additional states and geographic areas in interstate commerce in connection with Metro Storage's products and services.

37.     Metro Storage has carefully monitored, exercised its reasonable business judgment, and exerted commercially reasonable efforts to police unauthorized third party use of the Metro Storage Marks or similar uses thereof that are confusingly similar to its Metro Storage Marks.

## DEFENDANTS' BUSINESS AND INFRINGING ACTIVITIES

38.     Upon information and belief, defendant MMS owns and operates a business named "Metro Mini Storage" for rental storage facilities in or around

- 12 -

Houston, Texas and surrounding communities, as well as websites located at www.metroministorage.net and www.expectgreatstorage.com.

39.     Upon information and belief, MMS or the LPs operate the facilities at each of locations owned by the LPs, and MMS may own some or a controlling interest in each of the LPs.

40.     Upon information and belief, MMS originally was incorporated in 2001 under the name Stagecoach Self Storage Centers Inc. In 2002 the entity changed its name to Metro Mini Storage Inc. and began calling its locations and services "Metro Mini Storage", long after Metro Storage's 1996 federal trademark registration of its METRO SELF STORAGE® mark.

41.     Defendants have used, and continue to use, a logo design similar to the Metro Storage Keyhole Design Logo, with a keyhole forming the "o" of the

word "Metro", shown below and in Exhibit C,                              , in connection with the name "Metro Mini Storage", on Defendants' signage, websites and advertising of goods and services (collectively, the "Infringing Mark").

42.     Metro Storage's federal trademark registration of its METRO SELF STORAGE® mark provides constructive nationwide notice of its rights since

1996. This notice enables Metro Storage to enter any market in the United States with trademark rights that are senior to and have priority over any local owner of an confusingly similar mark who adopted that mark after issuance of Metro Storage's trademark registration in 1996.

43.     In 2006, Metro Storage first contacted MMS to make MMS expressly aware of its prior registration and object to its use of the Infringing Mark in Texas. Metro Storage did not pursue an infringement action at that time, in its reasonable business judgment, because Metro Storage did not then have any locations in the Houston area.

44.     In 2011, Metro Storage again contacted MMS to object to its use of the Infringing Mark in Texas. At this time, Metro Storage informed MMS of its 20 locations in Texas and plans for further expansion in Texas. Metro Storage noted Defendants' expansion of facilities in the Houston area to 7 locations despite notice of Metro Storage's prior national trademark rights. Metro Storage did not pursue an infringement action at that time, in its reasonable business judgment, due to the distance between the parties' locations in Texas.

45.     In March 2017, Metro Storage again contacted MMS to object to its use of the Infringing Mark in Texas. At this time, Metro Storage informed MMS of its December 2016 acquisition of 4 locations in Houston, in addition to two

previous locations in Kingwood and La Marque. Metro Storage informed MMS that its Houston locations were receiving misdirected calls from confused customers seeking or complaining about Defendants' services. With a likelihood of confusion and actual confusion and related damage to Metro Storage's Metro Storage Marks and related good will now arising from Defendants' continuing use of the Infringing Marks, Metro Storage offered MMS, the junior user, the opportunity to wind down its use and change to a non-infringing name. MMS declined. Accordingly, Metro Storage has no choice but to proceed with this lawsuit in order to protect its valuable good will and reputation and halt further consumer confusion.

46.    Despite knowledge of Metro Storage's nationwide priority and national advertising and reputation, and local use in the Houston area, and evidence of actual confusion with Metro Storage's prior rights, Defendants have continued to willfully and intentionally infringe the Metro Storage Marks.

47.    Upon information and belief, MMS operates 7 "Metro Mini Storage" locations in the Houston area, currently Cinco Ranch, College Station, Copperfield, Fairfield, Kingwood, The Woodlands at Gosling Rd., and The Woodlands at FM1488. These locations are as little as 7 miles from a Metro Storage location, with at least 5 of Defendants' locations less than 20 miles from a

Metro Storage location. Customers living between the parties' locations must choose between facilities with confusingly similar names. Internet and print marketing is directed to the greater Houston area, so consumers in the Houston market receive advertising messages for storage facilities from both METRO SELF STORAGE ® and "Metro Mini Storage". It is even more likely that consumers will be confused, mistakenly believing Defendants' facilities are offered by, endorsed by, or associated with Metro Storage, or vice versa.

48.    The Infringing Mark is a colorable imitation of the Metro Storage Marks, and Defendants' use of the Infringing Mark is not authorized by Metro Storage, the senior owner with priority rights. The Infringing Mark as used for competing rental storage services is likely to cause confusion or mistake or to deceive consumers into believing that Defendants are owned, endorsed or sponsored by, affiliated with, or otherwise authorized to represent Metro Storage, or is a line of smaller or "mini" locations for METRO SELF STORAGE®.

49.    Metro Storage has repeatedly demanded that MMS cease its use of the confusingly similar name and design logo, to no avail. Defendants refuse to cease use of the Infringing Mark in connection with their confusingly similar and competitive services.

50.     Defendants actively continue to use the Infringing Mark with full knowledge of Metro Storage's ownership of the Metro Storage Marks, including its exclusive and prior right to use such intellectual property and the goodwill associated therewith nationally and in the Houston area, and knowledge of the actual confusion causing harm to Metro Storage's rights, good will and reputation.

51.     Defendants engage in the above-infringing and tortious activities knowingly and intentionally.

52.     Actual confusion of Metro Storage's customers has occurred, and will continue to occur unless Defendants cease use of the Infringing Mark.

53.     Unless stopped, this confusing, misleading and deceptive use of the Infringing Mark will continue to harm Metro Storage's relationships with its current and prospective customers, disrupt its business opportunities, and damage its reputation and the value of its established marks, trade dress and related good will. Defendants also may unlawfully and improperly obtain information from Metro Storage's customers that could place Metro Storage at an unlawful competitive disadvantage.

54.     Defendants' unauthorized use of Metro Storage's marks has caused and is likely to continue to cause confusion, mistake and deception sufficient to constitute infringement of Metro Storage's rights in and to the Metro Storage

- 17 -

Marks and Metro Storage Keyhole Logo and to constitute unfair competition, irreparably damaging Metro Storage and its rights, good will and reputation. Such confusion, mistake and deception is clearly not inadvertent and in good faith, but is intentional and willful.

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

55.     Metro Storage incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

56.     Metro Storage exclusively owns an incontestable federal trademark registration for METRO SELF STORAGE®, Reg. No. 1,954,586, issued February 6, 1996.

57.     Metro Storage has continuously used its federally registered mark in interstate commerce in connection with the advertising and promotion of its storage services and associated goods and services.

58.     Defendants have used, and continue to use, the Infringing Mark and colorable imitations of Metro Storage's federally registered mark without Metro Storage's authorization in connection with the operation of their competing storage rental business and related websites.

59.     The actions of Defendants described herein constitute infringement of Metro Storage's federally registered mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

60.     Defendants' willful, deliberate and unauthorized use of "Metro Mini Storage" has caused confusion and is likely to continue to cause confusion, mistake and deception with Metro Storage's federally registered mark in that consumers are likely to associate and believe Defendants or their services or locations are owned by, affiliated with, authorized by, endorsed by, and/or sponsored by Metro Storage. In the alternative, to the extent that local consumers in the Houston area may have first encountered Defendants' mark and services, Defendants' infringing use of "Metro Mini Storage" is likely to cause reverse confusion by creating the false impression that Metro Storage's federally registered senior mark comes from the same source as Defendants' services. Such use by Defendants is in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

61.     As a direct and proximate result of Defendants' unauthorized use of the Infringing Mark, Defendants have damaged and will continue to damage Metro Storage's good will and reputation, which is likely to cause a loss of sales and profits for Metro Storage. Defendants' actions have caused and will continue to cause irreparable harm to Metro Storage and to the public, which is confused, or is

likely to be confused, by Defendants' unauthorized use of Metro Storage's federally registered mark, unless restrained and enjoined by this Court. Metro Storage has no adequate remedy at law to prevent Defendants from continuing their infringing actions and from injuring Metro Storage.

62.     As a further direct and proximate result of Defendants' actions, Metro Storage has been damaged and will continue to sustain damage and is entitled to receive compensation arising from its lost sales, lost profits, and efforts necessary to minimize and/or prevent customer confusion, in an amount to be proven at the time of trial. In addition, Metro Storage is entitled to disgorge Defendants' profits, and is entitled to interest and to its attorneys' fees and costs incurred bringing this action, all in an amount to be proven at the time of trial. Metro Storage is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

63.     Defendants have acted in bad faith and/or willfully in adopting the Infringing Mark, and continuing to use the Infringing Mark in connection with the operation of their storage rental business.

64.     Metro Storage requests that the damages sustained by Metro Storage as a result of the conduct alleged herein should be trebled in accordance with 15 U.S.C. § 1117(b).

## COUNT II
### FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

65.     Metro Storage incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

66.     Metro Storage's trademark rights in its METRO STORAGE mark and its Metro Storage Keyhole Logo mark, and all related trademark and trade dress variations, are protected under federal common law.

67.     Upon information and belief, Defendants' use of the Infringing Mark constitutes a false designation of origin, a false or misleading description of fact, and/or false or misleading representation of fact, and has caused and is likely to cause confusion, mistake, and/or deception as to the affiliation, connection or association of Defendants with Metro Storage; the origin, sponsorship, or approval of Defendants by Metro Storage; and/or the nature, characteristics, or qualities of Defendants' goods that bear and/or rendering of services in connection with the Infringing Mark.

68.     The aforesaid acts constitute federal unfair competition in violation of 15 U.S.C. § 1125(a).

69.     As a direct and proximate result of Defendants' actions, Metro Storage has suffered and will continue to suffer general damages according to proof at trial.

70.    As a further direct and proximate result of Defendants' use of the Infringing Mark, Defendants have damaged and will continue to damage Metro Storage's good will and reputation in its common law trademark rights, and has caused and is likely to continue to cause lost sales and lost profits to Metro Storage. Defendants' actions have caused and will continue to cause irreparable harm to Metro Storage and to the public confused or likely to be confused by Defendants' use of the Infringing Mark, unless restrained and enjoined by this Court. Metro Storage has no adequate remedy at law to prevent Defendants from continuing their infringing actions and from injuring Metro Storage. Metro Storage seeks injunctive relief as set forth above.

71.    As a further direct and proximate result of Defendants' actions, Metro Storage has been damaged and is entitled to receive compensation arising from its lost sales, lost profits, and for all expenses necessary to minimize and/or prevent customer confusion. Metro Storage also seeks to disgorge Defendants' profits, to interest, and to recovery of its attorneys' fees and costs in bringing this action, all in an amount to be proven at the time of trial, and all other and further forms of relief this Court deems appropriate.

## COUNT III
### STATE UNFAIR COMPETITION

72.     Metro Storage incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

73.     Under Texas law, ""Unfair competition" includes several causes of action including: 1) passing off or palming off; 2) trade secret misappropriation, and 3) common law misappropriation." *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App. - Waco 1993, writ denied).

74.     Defendants have engaged in unfair competition by misleading consumers by passing off their facilities as owned by, affiliated with, authorized by, endorsed by, and/or sponsored by Metro Storage and as using the Metro Storage Marks with Metro Storage's authorization, when Defendants do not have any such authorization from Metro Storage.

75.     Consumers viewing the Infringing Mark and goods and services advertised and offered by Defendants have been and will continue to be confused as to the source of these goods and services and/or have been and will be under the false impression that the goods and services originated from Metro Storage, or were authorized or endorsed by Metro Storage to be offered and distributed by Defendants.

- 23 -

76.     Under the common law of Texas, Defendants' conduct constitutes unfair competition and has damaged Metro Storage.

**COUNT IV**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE**
**PRACTICES ACT (TEX. BUS. & COMM. CODE § 17.41 ET SEQ.)**

77.     Metro Storage incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

78.     Texas' Deceptive Trade Practices Act provides that "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Tex. Bus. & Comm. Code § 17.41, et seq.

79.     Defendants have violated Texas' Deceptive Trade Practices Act by misleading consumers by falsely representing that Defendants are affiliated or associated with or endorsed by Metro Storage and use the Metro Storage Marks with Metro Storage's authorization, when Defendants do not have any such authorization from Metro Storage.

80.     Consumers viewing Defendants' websites, signage and locations, or the goods or services advertised and offered by Defendants have been, are likely to be, and will continue to be confused as to the source of the goods or services and/or have been and will be under the false impression that the goods or services

originated from Metro Storage, or were authorized by Metro Storage to be offered and distributed by Defendants.

81.    Metro Storage has been damaged by Defendants' violation of Texas' Deceptive Trade Practices Act.

## COUNT V
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONSHIPS

82.    Metro Storage incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

83.    Metro Storage has prospective contractual and business relationships with customers.

84.    Defendants acted purposely and improperly as alleged herein and with malice with the intent to injure to Metro Storage's prospective relationships with potential customers of Metro Storage.

85.    Defendants' intentional conduct as alleged herein was improper and wrongful conduct without privilege.

86.    Defendants' intentional conduct and interference as alleged herein has hindered performance of potential customers seeking to purchase or utilize Metro Storage goods and services and/or made the performance more difficult and/or expensive.

87.    Defendants' intentional conduct and interference as alleged herein has disrupted business relations that otherwise were reasonably likely to develop.

88.    Defendants' intentional and wrongful conduct and interference as alleged herein has and continues to cause Metro Storage to suffer damages in an amount to be determined by the trier of fact. Defendants' tortious conduct proximately caused the damage to Metro Storage.

89.    Defendants' misconduct and interference is willful and demonstrates a lack of care constituting a conscious indifference to the consequences of its activities. Thus, Metro Storage is entitled to punitive damages in an amount to be determined by an impartial jury.

90.    By their intentional conduct as alleged herein, Defendants have acted in bad faith and have caused Metro Storage unnecessary trouble and expense, entitling Metro Storage to recover all costs in prosecuting this action including, but not limited to, reasonable attorneys' fees.

## COUNT VI
### UNJUST ENRICHMENT

91.    Metro Storage incorporates by reference the previous allegations of the Complaint as though fully set forth herein.

92.    Upon information and belief, Defendants have received and continue to receive profits and other benefits from their unauthorized displaying, marketing,

advertising, and distribution of goods and services bearing the Infringing Mark and other colorable imitations of the Metro Storage Marks. Those profits and other benefits, to the extent that they have been and/or are being generated by Defendants' infringing use of the Metro Storage Marks, rightfully belong to and should have been received by Metro Storage.

93.     By reason of their infringing actions, Defendants have been unjustly enriched at Metro Storage's expense in an amount to be proved at trial.

94.     All profits and other benefits that have been received by Defendants from unauthorized displaying, marketing, advertising, and distribution of goods and services bearing the Infringing Mark and other colorable imitations of the Metro Storage Marks, are now due and owing to Metro Storage.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Metro Storage demands the entry of judgment:

(a)     declaring that Defendants, their agents, servants, employees, attorneys and any related companies, and all persons in active concert or participation with one or more of them, be preliminarily and permanently enjoined and restrained from unlawfully using the Metro Storage Marks, and any mark that is confusingly similar to the Metro Storage Marks, including the Infringing Mark;

(b)     requiring Defendants to deliver to Metro Storage any and all products or other physical items in Defendants' possession that infringe upon the Metro Storage Marks;

(c)     declaring that the Metro Storage Marks have been infringed by Defendants' acts under 15 U.S.C. § 1114 and § 1125(a), and that such infringement was willful and intentional;

(d)     awarding compensatory damages under federal law, including treble damages, and consequential and punitive damages under state law, in favor of Metro Storage and against Defendants, together with interest thereon;

(e)     disgorging from Defendants all profits gained as a result of Defendants' acts of unfair competition;

(f)     awarding Metro Storage prejudgment interest to the maximum extent recoverable by contract or law;

(g)     awarding Metro Storage all costs of this action and attorneys' fees; and

(h)     granting Metro Storage all other and additional relief as justice may require or as the Court may deem appropriate.

Dated: Houston, Texas  Respectfully submitted,
        October 13,  2017

DENTONS US LLP

By:   /s/  *Glenn A. Ballard, Jr.*
    Glenn A. Ballard, Jr.
    1221 McKinney Street #1900
    Houston, Texas 77010
    (713) 658-4600
    glenn.ballard@dentons.com

    Carol Anne Been, *Of counsel*
    233 South Wacker Drive, Suite 5900
    Chicago, IL  60606-6361
    (312) 876-8000
    carolanne.been@dentons.com

    Kate E. Hart, *Of counsel*
    4520 Main Street, Suite 1100
    Kansas City, MO  64111-7700
    (816) 460-2400
    kate.hart@dentons.com

    *Attorneys for Plaintiff Metro Storage LLC*

Exhibit A - copy of certificate of registration

Exhibit B - examples of use of Metro Storage LLC's marks

Exhibit C - examples of use of Metro Mini Storage Inc.'s logos